Roger SMITH, Appellant,

v.

The STATE of Texas, State.

No. 2–84–336–CR.

Court of Appeals of Texas,
Fort Worth.

Nov. 21, 1985.

Zachry, Kearney, Hill, Shaw, Beatty & Butcher, and Allan K. Butcher, and Jeff Kearney, Forth Worth, for appellant.

Tim Curry, Dist. Atty., and Russell Saunders, Asst. Dist. Atty., Fort Worth, for State.

Before FENDER, C.J., and ASHWORTH and JOE SPURLOCK, II, JJ.

OPINION

FENDER, Chief Justice.

This is an appeal from a jury conviction for Burglary of a Habitation with punishment fixed by the court (following a plea of "True" to three prior convictions alleged in the indictment) at twenty-five years. Appellant urges three grounds of error, to-wit: (1) improper denial of challenge to one juror, alleging bias and/or prejudice, (2) misapplication of the law to the facts in charge on law of parties, and (3) error in the admission of a photographic spread, thereby improperly bolstering the unimpeached testimony of a witness.

We affirm.

Appellant first complains that the trial court should have sustained a challenge for cause as to Venireman Russell based on the following excerpts from the statement of facts:

"MR. KEARNEY [defense counsel]: People might perceive a traffic ticket, and that is an accusation. Obviously the ticket or the accusation that Roger has is a much more serious one, but Mrs. Therrell, it wouldn't be a fair situation do you think, that if you received a traffic ticket and you went down to the Judge and you had an excuse or a reason to present, and he said, no, just the mere fact that you got a ticket means that you are guilty. That wouldn't be a very fair system, would it?

"THE JUROR: Doesn't sound very good.

"MR. KEARNEY: Okay. Does anyone have any problem with looking at Roger sitting over here right now?

"A JUROR: I do. I feel like if he has been charged, there evidently is some basis for the charge.

"MR. KEARNEY: That is an opinion that some people have and a feeling that you have, and I appreciate your honesty and that's why we are here. We don't want anybody to get in a situation where they might have to sit up there and they would be uncomfortable about that, because when this is all said and done, I anticipate the Court in his instructions, will say to each and every one of you, that Roger Smith is presumed to be innocent until his guilt is removed by legal and credible and competent evidence beyond a reasonable doubt.

"He is going to tell you that, and he is going to tell you that you have to follow this law, and nobody is going to ask you to follow the law if you don't believe in it, okay.

.     .     .     .     .

"JUROR RUSSELL: I feel about the same way. I don't believe that a Tarrant County law enforcement agency would go through the trouble of an arrest, and the Grand Jury, and indicting, and coming to trial if there wasn't some guilt there.

"MR. KEARNEY: Yes, sir. That's the problem that we have about our law, and the way that people feel.

.     .     .     .     .

"THE COURT: Mr. Kearney, let me instruct him again here on something which I did at the beginning, but maybe some of the jurors have forgotten it.

"You are instructed that the Grand Jury indictment is no evidence of guilt. It is the means whereby a Defendant is brought to trial in a felony prosecution. It is not evidence nor can it be considered by you in passing upon the innocence or guilt of the Defendant.

"Continue, Mr. Kearney.

"MR. KEARNEY: Thank you, Judge.

"The Judge has told you that's the law and that's what we have been talking about. My questions are going to be directed to you, Mr. Russell, concerning how you feel about actually following that law, and if that would cause you some difficulty. You understand that citizens have a duty to serve on juries, but if they feel uncomfortable and don't feel like they can follow the law, they have just as much duty to speak up and say so, and you might be qualified to serve on all other juries maybe later on down the line, but in a case such as this, there might be some reason why you feel like it wouldn't be proper for you to sit. Okay?

"THE JUROR: Uh-huh.

"MR. KEARNEY: My question is, Mr. Russell, because of the way you feel deep down inside of you and the opinion that you have, do you feel like you could not presume the accused to be innocent after he has been arrested and indicted, and sitting in Court?

"THE JUROR: I'm not sure if I can answer that honestly.

"MR. KEARNEY: Can you tell me, Mr. Russell, the way you feel deep down inside and the opinion that you have, because of the fact that the accused has been arrested and indicted and brought into Court, that that opinion, whether it could be changed later or not—but that opinion as it exists right now would cause you to have some small degree of bias or prejudice against the accused because he is sitting here and been accused and arrested, no matter how slight?

"THE JUROR: I believe there would be some.

"MR. KEARNEY: Your Honor, at this time, we would challenge Mr. Russell for cause on the basis of bias and prejudice.

.     .     .     .     .

"THE COURT: Mr. Russell, I simply need to ask you this, sir. Do you have any bias or prejudice in favor of or against this Defendant in this case?

"MR. KEARNEY: We have the same objection to the Court's question, Judge. May we have a ruling?

"THE COURT: I just ruled, Mr. Kearney. I overruled you. Would you like for me to repeat that question, sir?

"THE JUROR: Yes, sir.

"THE COURT: Do you have any bias or prejudice in favor of or against the defendant in this case?

"THE JUROR: No, sir.

"THE COURT: All right. You may proceed, Mr. Kearney.

"MR. KEARNEY: Do you feel like that you can tell me and tell Roger Smith, and tell the Court that you can honestly presume him to be innocent as he sits here today, even though he has been arrested and indicted?

"THE JUROR: Maybe I misunderstand the wording in the difference the way the Judge asks it and the way you do, but I cannot say I can honestly sit up there without any doubt and say I have no bias. I have no intent and I'm not trying to be biased, but whether I can honestly sit up there without any bias, I do not know. I don't have that feeling to say yes or no positively.

"MR. KEARNEY: You can't tell me that you can sit up there without any bias.

"THE JUROR: Right.

"MR. KEARNEY: But that's part of the opinion that you have about someone that's been accused or indicted, and arrested, and that type of thing.

"THE JUROR: Well, the way our judicial system is, I don't believe it would go this far unless there was something there.

"MR. KEARNEY: And that's your opinion about it, is that right?

"THE JUROR: Yes.

"MR. KEARNEY: And we respect that. Everybody has their own opinion. My question to you is, even though that's the opinion that you have—and I'm not suggesting that's something that couldn't be changed later on. But my question is, be-

cause you have that opinion, do you have, no matter how slight, a feeling that you can tell me from deep down inside of you, you have any degree whatsoever of bias and prejudice against this particular Defendant?

"THE JUROR: I guess so.

"MR. KEARNEY: Okay. Again, Your Honor, we would submit the juror for cause.

"THE COURT: The question Mr. Kearney is, whether or not the people on the Jury Panel can follow the law. I'll instruct you again. All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. Now, everybody is going to have some bias or prejudice about something. The question is, can you serve on a jury and follow the law? It's that simple.

"THE JUROR: That's a simple question, and yes, I believe I can.

"THE COURT: Continue, Mr. Kearney.

"MR. KEARNEY: We have made a challenge for cause, Judge, based on bias and prejudice, and may we have a ruling, please?

"THE COURT: Overruled."

In *Anderson v. State*, 633 S.W.2d 851 (Tex.Crim.App.1982) Judge Teague stated the following in upholding the trial court's refusal to dismiss a juror for bias:

Bias exists as a matter of law when a prospective juror admits that he is biased for or against a defendant, [*cites omitted*]; admits prejudice against persons who use intoxicating beverages, when the defendant is charged with an offense involving liquor, [*cites omitted*]; or when he admits or demonstrates prejudice toward a racial or ethnic class of which the defendant is a member. [*Cites omitted*]. Bias as a matter of law is also shown when the prospective juror ... is related to the State's primary witness, [*cite omitted*].

When a prospective juror is shown to be biased as a matter of law, he *must* [emphasis theirs] be excused when chal-

lenged, even if he states that he can set his bias aside and provide a fair trial, [*cites omitted*]. However, it is left to the discretion of the trial court to first determine whether or not bias exists. Where the juror states he believes that he can set aside any influences he may have, and the trial court overrules a challenge for cause, its decision will be reviewed in light of all of the answers the prospective juror gives. [*Cites omitted*].

■ A review of the questions, answers and instructions composing the *voir dire* examination of Venireman Russell (*supra*) reflects no abuse of discretion by the trial judge who had the opportunity to observe the demeanor of all involved and to hear the various tonal inflections used. From the cold record, it would appear that Venireman Russell at most reflected the normal curiosity of any prospective juror in any lawsuit—"Why are we here?" To expect any juror to say that he did not believe that some investigatory process and some "finger pointing" had caused the assemblage of such a group in the courtroom would require as veniremen persons who would believe that defendants in criminal cases are chosen by lot and subjected to vicarious charges randomly selected. If this court should sustain this challenge on this record it would become virtually impossible to ever seat a jury in any criminal case. Appellant's first ground of error is overruled.

■ In the second ground of error appellant complains that the trial court failed to properly apply the law to the facts with regard to the law of parties. Appellant urges that the law of parties should be broken down into component parts as follows:

a.  (1) in order to *assist* the commission of the offense he *solicited* its commission

   (2) in order to *promote* the commission of the offense he *solicited* its commission

b.  (1) in order to *assist* the commission of the offense he *encouraged* its commission

(2) in order to *promote* the commission of the offense he *encouraged* its commission

c.  (1) in order to *assist* the commission of the offense he *directed* its commission

   (2) in order to *promote* the commission of the offense he *directed* its commission

d.  (1) in order to *assist* the commission of the offense he *aided* its commission

   (2) in order to *promote* the commission of the offense he *aided* its commission

e.  (1) in order to *assist* the commission of the offense he *attempted to aid* its commission

   (2) in order to *promote* the commission of the offense he *attempted to aid* its commission

Appellant then would have the trial court determine which (if any) of these individual segments could be supported by the evidence and charge the jury only on such segments.

Such contention is not novel in this or any appellate court in this State handling criminal cases. Its genesis lies in the law review article, *Submitting the Law of Parties in a Texas Criminal Presentation*, 33 BAYLOR L. REV. 267 (1981), jointly constructed by attorneys Percy Foreman and Luther Jones, both respected and innovative practitioners who have appeared with great success in courts throughout the state for many years. As far as this court is concerned this ground of error should meet its exodus in the same law review article. It simply consists of a hypercritical broadside attack on the Texas law of parties—essentially the criminal equivalent of the principle of joint tort-feasors in the civil law. Appellant cites no authority for such blanket condemnation of this rule and this court declines to create such precedent for him. Appellant's second ground of error is overruled.

■ Appellant's third ground of error complains of the admission of the photographic spread (or lineup) which was viewed by the State's principal witness (one

Anthony Parker) and from which Parker picked out the picture of the defendant as the person he viewed on the premises of the injured party at the time in question in this cause. Appellant urges that this was impermissible bolstering of such identity testimony.

The authorities cited by appellant quite properly show that the testimony of a witness cannot be bolstered by the testimony of another witness, i.e., another person cannot testify that the witness picked a particular picture out of a lineup, etc. In the instant case the witness himself testified that *he* picked out a particular picture and *he* was the sponsoring witness of the line-up introduced into evidence. Appellant offers no authority condemning such a procedure and we find none. Appellant's third ground of error is overruled.

The judgment of the trial court is affirmed.